**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BSN SPORTS, LLC,

       Plaintiff,

                                 CASE NO.: 3:20-cv-644 _____

vs.

SUSAN CHAILLE and BAKER'S
SPORTS, INC.,

       Defendants.

_____/

**PLAINTIFF'S VERIFIED COMPLAINT**
**FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff BSN SPORTS, LLC, ("BSN" or "Plaintiff"), by and through undersigned counsel, sues former BSN employee Susan Chaille ("Chaille") and Baker's Sports, Inc. ("Baker's"), and alleges:

**NATURE OF THE ACTION**

1.    This action asserts claims against Chaille for violating the Florida Uniform Trade Secrets Act, Chapter 688, Florida Statutes; the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; for breaching her valid and enforceable restrictive covenant agreement with BSN; for breaching her employee duty of loyalty to BSN and; for tortious interference with BSN's advantageous business and contractual relationships with its customers.  This action asserts claims against Baker's for tortious interference with BSN's advantageous business and contractual relationship with Chaille, and against Chaille and Baker jointly and severally for engaging in an unlawful civil

conspiracy to irreparably harm BSN and cause BSN to suffer monetary damages and other harm.

2.     Baker's knowingly accepted the benefits of and participated in Chaille's wrongful conduct against BSN, and directly facilitated Chaille's breach of her statutory, contractual, and common law obligations to BSN, causing irreparable harm and significant monetary damages to BSN.  BSN seeks to cease and prevent ongoing irreparable harm arising from Chaille and Baker's' wrongful conduct through a preliminary and permanent injunction, recovery of monetary damages, and other available relief.

## PARTIES

3.     BSN is a limited liability company organized under the laws of Delaware. BSN's members are individuals who are all citizens of the state of Texas.

4.     Baker's Sports, Inc. is a Florida corporation with its principal place of business in Jacksonville, Florida.

5.     Susan Chaille ("Chaille") is an adult individual residing at 581 Margaret Street, Neptune Beach, Florida.

## JURISDICTION AND VENUE

6.     The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, and supplementary jurisdiction pursuant to 28 U.S.C. § 1367, because all claims arise out of the same core nucleus of operative facts. This Court also has diversity jurisdiction over this lawsuit under 28 U.S.C. §1332(a), because BSN and the Defendants are citizens of different states, and the amount in controversy exceeds $75,000.

7.     Venue is proper in this District under 28 U.S.C. § 1391 (b) and (c) because Chaille resides and works in Florida within this District and Division, many of the customers she serviced while employed with BSN are located in this District and Division, and the harm to BSN caused by Defendants' wrongful conduct alleged herein occurred and continues to occur in this District and Division.  Additionally, Baker's conducts business in and maintains its principal place of business and headquarters within this District and Division.

## PLAINTIFF'S LEGITIMATE BUSINESS INTERESTS

8.     BSN is a leading nationwide marketer, manufacturer, and distributor of sporting goods to universities, secondary schools, and sports leagues.  BSN sells to customers via catalogs, online sales, and direct sales.

9.     BSN's products include apparel and equipment manufactured by brands including Nike and Under Armor, which are manufactured outside of the state of Florida and are shipped across state lines to BSN's customers in Florida.

10.     The sports equipment and apparel industry is highly competitive, and BSN's success in the industry depends largely on its trade secrets and proprietary and confidential information, as well as the relationships and good will it has developed with customers, suppliers and vendors.

11.     BSN has expanded substantial time, money and effort in developing its products, services, professional reputation, good will, and business networks.  In doing so, BSN has developed trade secrets and valuable confidential information, including without limitation, detailed product and service knowledge and development information, customer lists and contact information and preferences, marketing plans for potential customers, pricing

data and profit margin information, sales strategies and techniques, marketing strategies, operational practices, customer needs and preferences, consumer data, and overall product and service expertise.

12.     BSN relies on a foundation of trust and loyalty between BSN and its employees to promote the business model and protect its trade secrets and confidential information.

13.     BSN also makes significant efforts to protect its legitimate business interests including, but not limited to, entering into restrictive covenant agreements that include confidentiality, non-competition and non-solicitation provisions with certain employees, including Chaille.  Such measures are common and reasonable within BSN's industry.

14.     Measures BSN takes to protect the confidentiality of business information include, but are not limited to, ensuring that each individual laptop or tablet issued to a company employee is password protected and requires multiple log-ins to access the application and software programs.  Employees using a BSN-issued iPad must sign an Issuance and Use Agreement requiring that in exchange for the use of the iPad, the employee agrees to hold the company's confidential information in strict confidence. Employees of BSN have varying levels of access to proprietary software, applications and servers, all of which is based on whether they have a legitimate business need to access that level of information.  Similarly, mobile devices, including iPhones, Androids and tablets that are used to access BSN information are also required to be password protected.

15.     BSN issues each employee a handbook that provides that "[e]ach employee, as a condition of employment, shall be prohibited, and must agree, for and during the period of his/her employment or after his/her release, discharge or resignation, not to use or disclose for

his/her own or any other person's use or benefit, the copyrights, trade secrets or other confidential information of the Company." The Company handbook specifies that the Company's email systems, project plans, price lists, customer lists, customer contact information, vendor information, technical papers, management and sales reports, proposals, and work created by employees while working with BSN, among other documents, are the property of BSN and that employees may use them "only for authorized purposes." Unauthorized removal of Company property is "a serious violation of Company policy which will result in disciplinary action."

16.     BSN's handbook has a Computer and Software Usage policy that provides that use of the Company's computers "is intended for business activities only." Employees are prohibited from "[d]estroy[ing] the integrity of computer-based information."

17.     BSN's confidential and proprietary information derive independent economic value from not being generally known to the public and not being readily ascertainable by proper means, and have been subject to efforts that are reasonable under the circumstances to maintain and protect their secrecy.

18.     The confidential and proprietary information described in the preceding paragraphs are BSN's trade secrets under Federal and Florida law.

19.     Much of the economic benefit to BSN from this information stems from its confidential nature, because if BSN's trade secrets were to become known to competitors, BSN would lose the competitive advantage afforded it by this information.

20.     BSN expended substantial time, effort, money and resources in developing, maintaining, and protecting its trade secrets.

21.     BSN's legitimate business interests include, but are not limited to, confidential and proprietary information, trade secrets, market share in the industry, relationships with customers, financial institutions, referral sources, and employees, and BSN's reputation and goodwill in the industry.

## DEFENDANT BAKER'S SPORTING GOODS

22.     Baker's, which sells team equipment, uniforms, and shoes, is a direct competitor of Plaintiff.

23.     Upon information and belief, Baker's employs and/or has a business relationship with Chaille that began either before or after Chaille's employment with BSN ended on April 22, 2020.

24.     Upon information and belief, Baker's had direct and constructive knowledge of BSN's restrictive covenant agreements with Chaille, due to receipt of a letter from BSN's counsel dated May 18, 2020 that was delivered to Baker's on May 19, 2020, which contained a copy of Chaille's restrictive covenant agreement with BSN.  Further, Baker's knew or should have known that the restrictive covenants at issue in this case are customary in the industry. Moreover, upon information belief, Baker's never sought to confirm with BSN any contractual restrictions applicable to Chaille that restricted her from being associated with or employed by Baker's, and from using BSN's trade secrets and confidential information for Baker's benefit.

25.     Upon information and belief, Baker's knowingly and intentionally encouraged Chaille to continue to violate her restrictive covenants in order to interfere with BSN's business and unlawfully compete in the marketplace, and cause ongoing harm to BSN.

26.     Upon information and belief, Baker's conspired with Chaille to engage in a scheme of unfair and unlawful competition against BSN and to advance its position in the marketplace and harm BSN.

27.     Baker's knew or should have known that its plan to induce and assist Chaille was unlawful and would result in injury to BSN.

**DEFENDANT CHAILLE**

28.     Chaille was employed by BSN as a Sales Professional from May 6, 2019 to April 22, 2020.

29.     In her position with BSN, Chaille was responsible for developing and interacting with customers to increase BSN's sales of sports apparel and equipment.  In the course of her duties for BSN, Chaille was entrusted with and acquired substantial knowledge of BSN's trade secrets and confidential and proprietary information.

30.     Chaille had a duty not to disclose BSN's confidential and proprietary information and trade secrets for her own benefit, or for another's benefit, to BSN's detriment.

31.     During her employment, Chaille knew or should have known of BSN's Employee Handbook.

32.     On May 6, 2019, Chaille signed a "Confidentiality/Noncompete/Non-Solicitation Agreement ("Agreement"), attached as Exhibit A.

33.     Chaille agreed to certain confidentiality, non-solicitation, and non-competition provisions in the Agreement in exchange for consideration including her continued employment, and access to BSN's confidential and proprietary information, which was provided by BSN after she executed the Agreement.

34.    The Agreement provides in part:

**II.    Confidentiality/Nondisclosure Agreement**

1.    <u>Confidential Information</u>. Employee acknowledges and agrees that BSN 's customer, inventory, supplier, vendor, order, accounts receivable, payable databases, product, cost and pricing databases ("<u>Confidential Information</u>") are the exclusive property of BSN, that they are valuable, special and unique assets of BSN and that the maintenance of this information as confidential is necessary to protect BSN 's legitimate business interests in light of the competitive nature of the industry in which the business of BSN and/or its affiliates is conducted. Employee further acknowledges that Employee's knowledge and use of such Confidential Information is essential to the performance of his or her duties as a sales representative of BSN.

2.    <u>BSN's Obligations</u>. Within thirty (30) days from the effective date of this Agreement, BSN will do one or more of the following: (a) provide Employee with authorization to access BSN 's Confidential Information, with such authorization to be provided through a computer password or other means; and/or, (b) provide Employee authorization to develop and use goodwill of BSN through, for example, authorization to represent BSN in communications with customers, prospective customers, vendors and suppliers; customer relations related expense reimbursements in accordance with BSN policy limits; and/or assistance in facilitating contact with customers and/or vendors in order to help Employee develop goodwill for BSN; and/or (c) provide Employee with specialized training or authorization to participate in the specialized training referenced above in Section I.1.c. above. This paragraph is not contingent upon continued employment, but is dependent upon, and provided in exchange for, Employee's full compliance with the restrictions in Section II.3 and Section III. below.

3.    <u>Employee's Obligations</u>. Employee agrees not to engage in any unauthorized use, copying, retention or disclosure of BSN's Confidential Information. Employee agrees to maintain records on current and prospective BSN customers, suppliers, and other business relationships that he develops or helps to develop, and not to engage in any unauthorized use, or disclosure of this or any other BSN Confidential Information for so long as the Confidential Information is not intentionally made public by BSN. Employee also agrees to use the goodwill, specialized training, and contacts developed with BSN's customers and contractors, for the exclusive benefit of BSN, and agrees not to use same in any way that would knowingly harm the business interests of BSN or that would otherwise violate the terms of this Agreement.

### III.   **Protective Covenants**

BSN and Employee agree and acknowledge as follows:

1. Employee agrees that the covenants below are reasonable and necessary agreements for the protection of legitimate business interests of BSN covered in the fully enforceable, ancillary agreements of the parties, including but not limited to those set forth in Section II above.

2.   The parties stipulate that due to the nature of Employee's position with BSN, Employee would inevitably give a competitor an unfair competitive advantage if Employee was employed in a position to use certain information and goodwill entrusted to Employee by BSN for the benefit of a competitor. Therefore, in exchange for the promises made by BSN in Sections I. and II.2. above, as well as Employee's employment or continued employment with BSN, Employee agrees that during the period in which Employee is an employee of BSN or its affiliates, and for a period of twelve (12) months (the "Restricted Period") after Employee ceases for any reason to be an employee of BSN, Employee will not, either directly or indirectly, in any capacity whatsoever do any of the following:

(a)   Conduct or assist others in conducting any sales related activities for a business that engages in the promotion, marketing, distribution, manufacturing, bidding, sourcing, importing and/or sale of sports or physical education related equipment and/or supplies and uniforms to institutional customers (including, without limitation, schools, government agencies, military facilities, athletic clubs, youth sport leagues, recreational organizations, sporting goods dealers, teams, etc.) ("BSN Business") in Employee's geographic sales region set forth on Exhibit A attached hereto (the "Geographic Sales Region") or conduct any other activities in the Geographic Sales Region so similar in nature or purpose to those of BSN that they would displace business opportunities, customers, or beneficial contractors of BSN;

(b)   Call on, solicit, take away, provide service or accept the business of, or attempt to call on, solicit, take away, provide service or accept the business of any of the customers, suppliers, clients, licensors, licensees, distributors, dealers or independent salespersons of BSN or any of its affiliates in Employee's Geographic Sales Region with whom Employee had business contact, or about whom Employee received Confidential Information during the final two (2) years of Employee's employment with BSN. Employee and BSN understand and acknowledge that the restrictions herein relate to the sales and servicing of products and services in the Business, as defined above; or

(c)   induce, attempt to induce or assist any other person or entity in inducing or attempting to induce, directly or indirectly, any such customer, supplier, client,

licensor, licensee, dealer, distributor or independent salesperson to discontinue their relationship with BSN or its affiliates; or

(d)    recruit, hire, assist others in recruiting or hiring, discuss employment with or refer to others for employment (collectively referred to herein as "Recruiting Activity") any person who is, or within the twelve (12) month period immediately preceding the date of any such Recruiting Activity was, at any time, an employee of BSN or its affiliates.

3.    The parties hereto acknowledge that the provisions set forth in this Agreement are supported by good and valuable consideration. Employee acknowledges and agrees that the limitations as to time, geographic area and scope of activity set forth herein are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interests of BSN . Employee acknowledges and recognizes that the enforcement of any of the confidentiality, noncompetition and/or nonsolicitation provisions in this Agreement by BSN will not interfere with the ability of Employee to pursue a proper livelihood.

4.    Employee agrees and acknowledges that the existence of any counterclaim or dispute between Employee and BSN or any of its officers, directors or shareholders shall not constitute a defense to the enforcement of this covenant by BSN.

5.    If Employee fails to comply with the timed restrictions in this Agreement, the Restricted Period provided for will be extended by one day for each day Employee is found to have failed to have complied up to a maximum of 12 months.

35.    For the purposes of the Agreement, Chaille's "Geographic Sales Region" included customers in the State of Florida.  (Exhibit A, p. 2, Section III(2)(a).  Chaille served BSN's customers in or near Duval County, Florida.

36.    The restrictive covenants contained in the Agreement are narrowly tailored to protect BSN's legitimate business interests in protecting its confidential and proprietary information, trade secrets, reputation and goodwill, and its market share within its industry.

37.    BSN has legitimate business interests in prohibiting Chaille from using and disclosing BSN's confidential and proprietary information and trade secrets.

38.    BSN has legitimate business interests in prohibiting Chaille from soliciting employees and customers for a period of (12) twelve months following her separation from employment.

39.    BSN has legitimate business interests in prohibiting Chaille from working for a direct competitor for a period of (12) twelve months following her separation from employment.

40.    In connection with the termination of Chaille's employment with BSN on April 22, 2020, BSN was instructed Chaille to return her BSN issued laptop computer and iPad to BSN.

41.    From the iPad, Chaille would be able to view or share BSN product cost, marketing materials, inventory positions, and other confidential information and trade secrets. All of this information would be very beneficial to competitors, including Baker's, Chaille's current employer.

42.    Chaille's BSN-issued laptop computer likely contained order summaries and quotes, and customer-specific logos and related information.

43.    On or about April 25, 2020, Chaille or someone allowed access by Chaille to her BSN laptop, connected an unauthorized USB device to her BSN issued laptop.  During the time the USB device was connected, customer-specific information was accessed on the laptop, and most likely transferred to the USB device.  Then, the files accessed on the laptop were deleted, and then deleted again from the recycle bin.  This activity seemed deliberate and intended to permanently delete the customer-specific information from the laptop.  BSN does

not provide USB devices to its employees, and there is no valid business reason for Chaille's use of such a device, even more so after her employment with BSN had ended days earlier.

44.     On or about April 26, 2020, Chaille or someone using her BSN access password and credentials, deleted the entire contents of Chaille's BSN-issued iPad, by resetting the machine to factory settings.  This was a direct violation of BSN's computer usage policy, and had the effect of destroying and spoiling BSN's confidential information and trade secrets on the device, and spoiling and hiding any activity that may have been undertaken by Chaille or someone acting at her direction, to copy and take BSN's confidential information and trade secrets on the device, for later use including to benefit Baker's.  BSN had not authorized this deletion.   There was no valid business reason for Chaille or someone acting at her direction to delete the entire contents of her BSN-issued iPad after her employment with BSN ended.

45.     Upon information and belief, immediately after Chaille's employment with BSN ended, she began working for Baker's in the same capacity and the same territory in which she worked while employed at BSN, in violation of the Agreement.

46.     Upon information and belief, Chaille is continuing to breach her restrictive covenants on behalf of herself and as an agent of Baker's to advance her own pecuniary interests as well as those of Baker, her new employer.

47.     Upon information and belief, Chaille conspired with Baker's to breach her contractual, statutory, and common law duties to BSN, to irreparably harm and damage BSN.

48.     On May 12, 2020, BSN received credible and reliable information that its customer, Fletcher HS, began to work exclusively work with Chaille and Baker's.  BSN also

heard from another customer that Chaille serviced for BSN that Chaille contacted the customer as an agent of Baker's.

## CAUSES OF ACTION

## COUNT I

### Violation of Defend Trade Secrets Act, 18 U.S.C. § 1836
### (Against Chaille)

49.     BSN repeats and reasserts the allegations set forth in paragraphs 1 through 48 of the Verified Complaint and incorporates them herein by reference.

50.     During her employment with BSN Chaille had access to confidential and proprietary information.

51.     BSN's confidential and proprietary information are trade secrets under 18 U.S.C. § 1839(3) because they derive independent economic value, actual or potential, from not being generally known to, and not readily ascertainable through proper means, by competitors of BSN, and because BSN has taken reasonable measures to keep such information secret.

52.     BSN's trade secrets are related to products sold and distributed in interstate commerce.

53.     As more fully described above, BSN takes reasonable measures to protect the secrecy of such information. These measures include password protected databases, confidentiality and non-disclosure agreements, and limitations on dissemination of information on a need-to-know basis.

54.     Chaille knew she had a duty to maintain the secrecy of BSN's trade secrets due, in part, to her acknowledgment in her Agreement.

55. Chaille had a duty not to disclose or use misappropriated trade secrets for the purpose of gaining a competitive advantage in the marketplace.

56. Chaille misappropriated BSN's trade secrets by wrongfully obtaining, compiling, maintaining, and/or distributing documents and/or electronically stored information that includes BSN's trade secrets, including, upon information and belief, customers and pricing information.

57. Upon information and belief, Chaille used BSN's trade secrets to aid herself and Baker's to improperly solicit BSN's customers and compete with BSN.

58. Chaille's actions constitute a violation of 18 U.S.C. § 1836, *et seq*.

59. Chaille's misappropriation of BSN's trade secrets was willful and malicious under 18 U.S.C. § 1836(b)(3)(C).

60. Chaille and Baker's has have been unjustly enriched as a proximate result of Chaille's misappropriation and use of BSN's trade secrets.

61. BSN lacks an adequate remedy at law and is entitled to preliminary and permanent injunctive relief enjoining Chaille's unlawful use and misappropriation of BSN's trade secrets.

62. To the extent Chaille already provided BSN's trade secrets or other confidential information to third parties, those parties should also be ordered to return and/or destroy that information.

63. BSN is further entitled to actual damages and disgorgement of amounts by which Chaille was unjustly enriched, in amounts to be proven at trial, as well as punitive and/or exemplary damages.

64.     BSN has retained the Ogletree Deakins firm to represent it in this action and is entitled to recover reasonable attorneys' fees and litigation costs to full extent allowed under law.

## COUNT II

### Violation of the Florida Uniform Trade Secrets Act
### (Against Chaille)

65.     BSN repeats and reasserts the allegations set forth paragraphs 1 through 48 of the Verified Complaint and incorporates them herein by reference.

66.     While employed with BSN, Chaille had access to BSN's confidential and proprietary information including, customers, pricing and business strategy information, sales strategies and techniques, marketing strategies and information, customer needs and preferences, and other financial information, among other things.

67.     BSN expended substantial time, effort, money and resources in developing and maintaining its confidential and proprietary information.

68.     BSN takes reasonable, affirmative measures to maintain the confidentiality of this information for its exclusive benefit and competitive advantage in the industry.

69.     This confidential and proprietary information is BSN's trade secrets.

70.     Chaille had a duty not to disclose BSN's trade secrets for her own benefit, or for the benefit of another, to the detriment of BSN.

71.     Upon information and belief, Chaille wrongfully disclosed the trade secrets to Baker's and used the trade secrets, without BSN's express or implied consent, to advance her own pecuniary interests and those of Baker's, in violation of the restrictive covenants in the Agreement and Florida law.

72.     Upon information and belief, Chaille used BSN's trade secrets to solicit BSN's customers to purchase competitive products and/or services.

73.     Upon information and belief, Chaille continues to wrongfully disclose and use BSN's trade secrets, without BSN's express or implied consent, to advance her own pecuniary interests.

74.     Chaille's actions were and continue to be willful and malicious.

75.     Unless Chaille is enjoined from using the subject trade secrets, BSN will suffer immediate and irreparable injury in that Chaille will continue to have access to and the ability to make use of BSN's trade secrets for financial gain, and to aid Baker's.

76.     As a direct and proximate result of Chaille's misappropriation of BSN's trade secrets, BSN has suffered, and will continue to suffer, irreparable harm and economic damages.

77.     BSN lacks an adequate remedy at law and is entitled to preliminary and permanent injunctive relief enjoining Chaille's unlawful misappropriation of BSN's trade secrets.

78.     In addition to injunctive relief, under Florida law, BSN is entitled to recover actual damages, damages for unjust enrichment, punitive and/or exemplary damages, and attorneys' fees as a result of Chaille's misappropriation of BSN's trade secrets.

79.     BSN has retained the Ogletree Deakins firm to represent it in this action and is entitled to recover reasonable attorneys' fees and litigation costs to full extent allowed under law.

## COUNT III

**Breach of Contract**
**(Against Chaille)**

80.     BSN repeats and reasserts the allegations set forth in paragraphs 1 through 48 of the Complaint and incorporates them herein by reference.

81.     Chaille's Agreement is a valid and enforceable contract and based on sufficient consideration and was signed by Chaille.

82.     BSN enforces Chaille's Agreement as a party to the Agreement.

83.     Chaille's Agreement prohibits Chaille from using or disclosing BSN's confidential information.

84.     Chaille's Agreement prohibits Chaille from conducing sales-related activities for a competitor in the state of Florida for a period of 12 months following the end of her employment with BSN.

85.     Chaille's Agreement prohibits Chaille from soliciting BSN's customers in the relevant geographic territories defined in the Agreement for a period of (12) twelve months following the end of her employment with BSN.

86.     Baker's provides products and services similar or identical to those provided by BSN and is a direct competitor to BSN.

87.     BSN fully performed its obligations under Chaille's Agreements

88.     Chaille knowingly, intentionally, and materially breached the terms of the Agreement by, among other things, retaining and disclosing Plaintiff's confidential information and trade secrets.

89.     Chaille knowingly, intentionally, and materially breached the terms of her Agreement by, among other things, soliciting and conspiring to solicit Plaintiff's customers, and working for a competitor in the same capacity and territory for which she worked for BSN.

90.     BSN has been and continues to be damaged by Chaille's improper and unlawful actions in breaching the Agreement.

91.     BSN is entitled to a preliminary and permanent injunction restraining Chaille, and all others acting in concert with her, including, but not limited to, Baker's, from engaging in activities that violate the contractual obligations undertaken by Chaille in her Agreement.

92.     BSN is also entitled to an award of damages incurred as a result of the Chaille's material breach of her contractual obligations, in an amount to be determined at trial.

## COUNT IV

### Conversion
### (Against Chaille)

93.     BSN repeats and reasserts the allegations set forth in paragraphs 1 through 48 of the Verified Complaint and incorporates them herein by reference.

94.     Prior to and/or following the end of Chaille's employment relationship with BSN, Chaille intentionally misappropriated certain trade secrets and confidential business information that is BSN's property, in order to use such property to unfairly compete with BSN.

95.     Chaille has, without authority or justification, assumed and exercised the right of ownership of BSN's property, as described above, and by her actions concurrently has denied BSN access to its own property.

96.     The conversion of BSN's property by Chaille was and is willful and malicious.

97.     BSN has been damaged as a proximate result of the conversion of its property by Defendants.

## COUNT V

### Tortious Interference with BSN's Contractual Relationships
### (Baker's and Chaille)

98.     BSN repeats and reasserts the allegations set forth in paragraphs 1 through 48 of the Verified Complaint and incorporates them herein by reference.

99.     BSN has valid and enforceable restrictive covenant agreements with Chaille specified in her Agreement.

100.    BSN has legitimate and protectable interests in its contractual and business relationships with its employees and former employees, including Chaille.

101.    Baker's and Chaille knew or should have known that BSN has valid and enforceable restrictive covenant agreements with Chaille, which is typical for the industry.

102.    Baker's intentionally encouraged and induced Chaille to violate the restrictive covenants in Chaille's Agreement to advance Baker's pecuniary interests.

103.    Defendants' interference was without justification or privilege, and malicious.

104.    Defendants' actions are ongoing.

105.    As a result of Baker's tortious interference with BSN's contractual and business relationship with Chaille, and Chaille's tortious interference with BSN's advantageous contractual relationship with Fletcher High School, BSN has suffered, and will continue to suffer, irreparable harm and economic damages.

## COUNT VI

**Breach of Duty of Loyalty**
**(Against Chaille)**

106.    BSN repeats and reasserts the allegations set forth in paragraphs 1 through 48 of the Verified Complaint and incorporates them herein by reference.

107.    As its employee, Chaille owed BSN a duty of undivided loyalty.  That duty required Chaille while employed by BSN and concluding her employment, to refrain from acting against BSN's best interest.

108.    Chaille's duty of loyalty also requires that, even after the termination of her employment, that she not use or disclose BSN's confidential and proprietary information.

109.    Chaille breached her duty of loyalty to BSN by engaging in conduct which included, but is not limited to, misappropriating BSN's trade secrets and confidential and proprietary information while still employed or concluding her employment with BSN and otherwise acting against the interest of BSN.

110.    As a direct and proximate consequence of Chaille's conduct, BSN has and will continue to suffer monetary damages, in an amount to be determined at trial.

111.    As a direct and proximate result of Chaille's violation of her contractual obligations to BSN, Chaille has exposed BSN to irreparable and incalculable harm, and damages.

112.    Chaille's actions are intentional, willful, wanton, and reckless and are calculated to harm BSN in its business affairs.

## COUNT VII

**Civil Conspiracy**
**(Against Baker's and Chaille)**

113.    BSN repeats and reasserts the allegations set forth in paragraphs 1 through 48 of the Verified Complaint and incorporates them herein by reference.

114.    Chaille and Baker's entered into an agreement with each other to commit the unlawful acts alleged in this action.

115.    Defendants engaged in overt acts in furtherance of their conspiracy or they knew of the scheme and assisted in some way.

116.    Defendants' underlying civil wrongs include all claims alleged in this Complaint.

117.    Defendants' civil conspiracy proximately caused BSN to suffer damages, including, but not limited to, lost profits.

## COUNT VIII

**Computer Fraud and Abuse Act**
**(Against Chaille)**

118.    BSN repeats and reasserts the allegations set forth in paragraphs 1 through 48 of the Verified Complaint and incorporates them herein by reference.

119.    The secure data network on which BSN maintained and currently maintains certain trade secrets, confidential information, and/or other proprietary information in electronic form exclusively for authorized users is a network of computers used in interstate commerce.

120.    The only employees who are allowed to access BSN's computer networks, system, and equipment are BSN's current employees who are accessing such for proper business purposes.

121.    Chaille exceeded her access to BSN's computer systems by violating the terms of her Agreement to protect, maintain the confidentiality of, and return to BSN at the termination of her employment confidential and proprietary information and trade secrets, by connecting an unauthorized USB device to their BSN computer, and by deleting the entire content of the iPad and resetting it, after the termination of her employment with BSN.

122.    Upon information and belief, Chaille's deletion of the entire content of her iPad was to conceal her wrongful conduct and theft of BSN's trade secrets and confidential information.  Chaille's deletion was without authorization and lacked any legitimate business purpose.

123.    By means of the conduct described above, Chaille intentionally accessed BSN's computer network without authorization and/or exceeded her authorization, and as a result of such conduct, caused damage and loss to BSN.

124.    Chaille engaged in the conduct described above for her own personal benefit as well as the benefit of Baker's, BSN's competitor.

125.    BSN has suffered damages and loss by reason of, and as a proximate result of, Chaille's conduct in violation of the Computer Fraud and Abuse Act described above, and the value of such loss to BSN exceeds $5,000.00 for a one-year period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff BSN respectfully requests that the Court enter an Order and Judgment in its favor and against Defendants Chaille and Baker's, and award BSN the following relief:

(A)    A preliminary and permanent injunction prohibiting Chaille from further taking, acquiring, disclosing, using in any way, otherwise misappropriating, or attempting to do any such thing with BSN's property, including, but not limited to, BSN's trade secrets and confidential business information;

(B)    A preliminary and/or permanent injunction prohibiting Chaille from competing unfairly with BSN based in any way on her knowledge and/or use of BSN's property or trade secrets;

(C)    A preliminary and/or permanent injunction prohibiting Chaille from engaging in activities that violate her contractual obligations to BSN contained in her Agreements, including, her competitive employment or relationship with Baker's, and solicitation of BSN's customers and employees.

(D)    A preliminary and/or permanent injunction prohibiting Chaille from wrongfully interfering with BSN's contracts and/or business relationships with its customers, vendors, suppliers and employees;

(E)    A preliminary and/or permanent injunction prohibiting Baker's from wrongfully interfering with BSN's Agreement with Chaille;

(F)    A preliminary and/or permanent injunction compelling Chaille to return and restore all of BSN's property (and all reproductions thereof) to BSN;

(G)     Monetary damages, including, but not limited to, compensatory damages, disgorgement of amounts by which Defendants were unjustly enriched, and exemplary and/or punitive damages;

(H)     Pre and post-judgment interest;

(I)     BSN's attorneys' fees and costs and expenses incurred in conjunction with this suit; and

(J)     Such other and further relief as the Court deems just and proper.

DATED:          June 24, 2020

                                        Respectfully submitted,

                                        */s/ Kevin D. Zwetsch*
                                        Kevin D. Zwetsch
                                        Florida Bar No.: 0962260
                                        E-mail: kevin.zwetsch@ogletree.com
                                        Secondary email: elba.chinea@ogletree.com
                                        OGLETREE, DEAKINS, NASH,
                                          SMOAK & STEWART, P.C.
                                        100 North Tampa Street, Suite 3600
                                        Tampa, FL 33602
                                        Telephone: (813) 289-1247
                                        Facsimile:  (813) 289-6530
                                        *ATTORNEYS FOR PLAINTIFF*

**STATE OF FLORIDA**

_DUVAL_ **COUNTY**

**VERIFICATION**

I, _JAMES BISTROW_, am the _V.P. ATLANTIC REGION_, BSN Sports, LLC.  I am

over eighteen (18) years of age.  I declare under penalty of perjury that the factual allegations

contained in the foregoing Verified Complaint are true and correct and that the basis of my

knowledge, information and belief is personal knowledge, and information shared with me in

the course of my business activities.

_____
Signature

_JAMES    BISTROW_
Printed Name

_V.P. ATLANTIC REGION_
Title

_6/24/2020_
Execution Date

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 24, 2020 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

*/s/ Kevin D. Zwetsch*
Attorney

43252788.1